In re Stephen W. GROSSE, Barry A. Dubin, D.D.S., P.C. f/d/a Dental Dimensions, et al., Debtors.

Barry D. DUBIN, Plaintiff,

v.

Frank JAKOBOWSKI, Esq., Defendant. (Two Cases)

Bankruptcy No. 83–1694G(F). Adv. No. 84–297G(F). Civ. A. Nos. 88–3792, 88–7969.

United States District Court, E.D. Pennsylvania.

Jan. 27, 1989.

---

Steven D. Usdin, Philadelphia, Pa., for plaintiff.

Lawrence T. Phelan, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

FULLAM, Chief Judge.

These consolidated appeals challenge Orders entered by the Bankruptcy Court which respectively require the defendant Frank Jakobowski to pay damages in the sum of $2550 as a sanction for contempt of the Bankruptcy Court, and to pay $15,480 in attorney's fees plus $361 in costs incurred by his adversaries as a result of his contumacious conduct.

It all started in 1983, when Mr. Jakobowski, on behalf of a client named Wolk, sued a dentist named Dubin and obtained judgment against him in the amount of $3,208 in the Philadelphia Court of Common Pleas. *Wolk v. Dubin, et al.*, No. 1095 Feb. Term 1982. Shortly thereafter, on April 20, 1983, Dubin filed for bankruptcy. In January 1984, apparently unaware of the bankruptcy proceeding, Mr. Jakobowski issued execution on the judgment and attached Dubin's bank account. On January 30, 1984, Jakobowski was formally notified of the pendency of the bankruptcy proceeding and the attendant automatic stay, and was requested to dissolve the attachment. Mr. Jakobowski did not accede to that request.

Counsel for the debtor petitioned the Bankruptcy Court for an adjudication of contempt against Jakobowski's client, Wolk. At a hearing on February 27, 1984, Wolk appeared, but Jakobowski did not. The bankruptcy judge ruled that Wolk would be in contempt unless the attachment were promptly dissolved, and would be subject to a daily fine for each day the attachment remained in effect beyond March 2, 1984. The Bankruptcy Court also ordered Wolk to instruct his counsel, Jakobowski, to dissolve the attachment and withdraw the writ of execution. On March 1, 1984, Wolk wrote a letter to the Bankruptcy Court, stating that he had instructed Jakobowski to dissolve the attachment, but that Jakobowski refused to comply with that request.

The debtor thereupon brought an adversary proceeding against Jakobowski, and sought a preliminary injunction and other relief. Neither Jakobowski nor his client appeared at the first hearing, so the matter was continued. At the continued hearing, Wolk appeared (having been subpoenaed to do so), but Jakobowski sent word that he would be a half-hour late. He did not appear, however, and the hearing proceeded in his absence. The bankruptcy judge entered an Order on April 26, 1984, directing Jakobowski to take immediate steps to dissolve the attachment on the debtor's bank account. Instead of complying, Jakobowski appealed to this court. The bankruptcy judge's Order was affirmed, by Memorandum and Order entered February 8, 1985. In the course of that Memorandum, I noted that none of Jakobowski's arguments had "even colorable merit".

In the meantime, while that appeal was pending before this court, Jakobowski had petitioned the Court of Common Pleas for "supplementary relief in aid of execution" in a further effort to enforce the Common Pleas judgment against Dubin, in plain defiance of the automatic stay and of the Orders of the Bankruptcy Court. It was necessary for the debtor's counsel to litigate that matter in the Court of Common Pleas, which, needless to say, denied Jakobowski's petition.

After this court's February 8, 1985 affirmance of the bankruptcy judge's Order, Jakobowski waited two weeks and then did, at long last, cause the attachment of the bank account to be withdrawn. He did not, however, inform the debtor, the debtor's counsel, or the bankruptcy court that he had done so. Under the impression that the attachment was still in effect, the debtor's counsel wrote to the bankruptcy judge, requesting an adjudication that the Common Pleas attachment was null and void. He sent a copy of that letter to Mr. Jakobowski, with the request that Jakobowski inform the court of any misstatements or errors in the letter. Jakobowski took no action, thus permitting both the Bankruptcy Court and the debtor's counsel to proceed on the assumption that the attachment was still in effect; this resulted in further proceedings in the Bankruptcy Court, culminating in a June 17, 1985 Order declaring the attachment null and void.

In September 1986, Jakobowski filed a second motion to dismiss the Complaint for injunctive and other relief. After briefing an argument, this motion was denied, and the case proceeded to hearings on the merits, which were held on April 1 and April 15, 1987. On April 8, 1988, 84 B.R. 377, the Bankruptcy Court awarded the debtor $2550 in compensatory damages, plus attorney's fees to be determined later. On September 7, 1988, after a further hearing on the matter of counsel fees, the Bankruptcy Court entered the second Order involved in this appeal, awarding $15,480 in counsel fees plus $361 in costs. These timely appeals followed, and were consolidated.

There can be no doubt that the Bankruptcy Court correctly decided all legal and factual issues in this case. Appellant's arguments, throughout this unnecessarily lengthy litigation, have been and continue to be devoid of merit.

■ Giving appellant the benefit of the doubt, it has been assumed throughout these proceedings that, when he initially issued execution on the state court judgment, Mr. Jakobowski did not know that a bankruptcy petition had been filed earlier,

and that the automatic stay was in effect. I continue to endorse that assumption, although it may be significant that, in the early stages of the case, appellant seemed to be arguing that the garnishment of the bank account did not violate the automatic stay because the debtor had not notified him of the bankruptcy; some parts of the record can be interpreted as suggesting that appellant was relying on the lack of formal notice, rather than asserting an actual lack of knowledge. Be that as it may, appellant was not, and is not now, charged with misconduct in obtaining the writ of attachment, but for his failure to withdraw the writ after being formally notified of the bankruptcy stay. Knowingly permitting the attachment to continue was, of course, a direct and intentional violation of the stay order. The contempt was exacerbated by appellant's later attempt to enforce the judgment, in outright defiance of the Order of the Bankruptcy Court (from which a totally a frivolous appeal had been taken).

Appellant has argued that, at the time of the conduct in question, the Bankruptcy Court did not have the legal authority to exercise contempt power. There was, for a time, a great deal of uncertainty on that issue, which has since been clarified by statute and rule change. Judge Fox's Opinion adequately addresses the issue and, in my view, correctly demonstrates that the Order was proper. In any event, the original contempt order was affirmed by this court in 1985 and, so far as appellant and the Bankruptcy Court are concerned, established the law of the case. Appellant's subsequent conduct should have been governed by that determination.

Appellant does not contest the Bankruptcy Court's calculations which resulted in the attorney's fee award, but argues that the whole problem could have been resolved with minimal effort by debtor's counsel. Instead of trying to get appellant to withdraw the state court execution, says Mr. Jakobowski, the debtor should have proceeded earlier in the Bankruptcy Court to obtain an order rendering the attachment null and void. This is disingenuous, to put it kindly. It was Mr. Jako-

bowski who erroneously insisted that he need not lift a finger to withdraw the writ of execution, and that it was up to debtor and debtor's counsel to undo the wrong previously committed by the appellant. And the judgment was pending in, and the writ of execution issued by, the Court of Common Pleas. Had Mr. Jakobowski done what he clearly was obligated to do, none of these counsel fees and expenses would have become necessary. Debtor's counsel proceeded appropriately, and Mr. Jakobowski is in no position to contend that the fees would have been less if only his opponents had agreed with his patently erroneous position in the matter.

The Orders appealed from will therefore be affirmed, for the reasons discussed above, and for the reasons more completely elaborated in the Opinions of the Bankruptcy Court.

One further issue must be mentioned. The debtor argues that these appeals are frivolous, and that double costs and attorney's fees should be awarded pursuant to Fed.R.App.Proc. 38. But the Federal Rules of Appellate Procedure apply only to appeals pending in a court of appeals, *see* Fed.R.App.Proc. 1; and Rule 38 itself makes clear that the authority therein conferred may be exercised only by courts of appeals. *See also In re American President Lines*, 779 F.2d 714, 717 (D.C.Cir.1985). The application under Rule 38 will therefore be denied.

## ORDER

AND NOW, this 27th day of January, 1988, it is ORDERED:

1. That the Bankruptcy Court's Order of April 8, 1988 is AFFIRMED.

2. That the Bankruptcy Court Order of September 8, 1988 is AFFIRMED.

3. That these appeals are DISMISSED.